1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

                            ----oo0oo----

11

12  JESSE BLUNT and DANIELLE
    DARDEN,
13                                    NO. 2:04-cv-1743-MCE-DAD
            Plaintiffs,
14                                    MEMORANDUM AND ORDER
        v.
15
    COUNTY OF SACRAMENTO; CITY OF
16  ELK GROVE; ELK GROVE POLICE
    DEPARTMENT; SERGEANT M. BOYES;
17  DEPUTY M. ROGERS; DEPUTY P.
    McCLUNG; DEPUTY K. BUNN; and
18  DOES 1 through 100 inclusive,

19          Defendants.

20                          ----oo0oo----

21      Through the present action, Plaintiffs Jesse Blunt and

22  Danielle Darden seek damages from Defendants as a result of the

23  circumstances surrounding their arrest and subsequent detainment

24  by law enforcement personnel on February 9, 2002.  Plaintiffs

25  assert claims under 42 U.S.C. § 1983 on theories of excessive

26  force and false arrest, and further allege a conspiracy claim

27  under 42 U.S.C. § 1985.  Plaintiffs further assert various state

28  law claims, including violation of the Unruh Civil Rights Act

                                  1

(Cal. Civil Code § 52.1), assault and battery, false imprisonment, malicious prosecution, intentional infliction of emotional distress and negligence.  Defendants now collectively move for summary judgment, or in the alternative summary adjudication, on grounds that Plaintiff's Complaint is barred by applicable statutes of limitation and/or by governmental immunities to which Defendants are entitled.  While Defendants' Motion for Summary Judgment is denied, as set forth below summary adjudication will be granted as to certain claims.

**BACKGROUND**

This case arises from a noise complaint lodged with the Elk Grove Police Department on February 9, 2002.  According to the reporting party, a black male in his 20's had "been pumping his music" from a "little black Honda" for the past hour.  The caller specifically identified the location of the parked car at 8765 Crucero Drive, a residential area in Elk Grove.  (See Pls.' Undisputed Fact ("UF") Nos. 4-7).  Defendant Michelle Boyes, a sergeant with the Elk Grove Police Department,[1] ultimately responded to the complaint after a radio transmission was

---

[1]According to Plaintiffs' Amended Complaint, both Sergeant Boyes and the other individually named Defendants, Deputies Michael Rogers, Kelly Bunn and Paul McClung, are appointed and act as officers for both the City of Elk Grove Police Department and the County of Sacramento Sheriff's Department.  (Pls.' Am. Compl., ¶¶ 18, 19, 51).  This is because the Sacramento County Sheriff's Department is under contract to provide law enforcement services to the City of Elk Grove.  (Rogers Dep., 21:17-21). Consequently both the City of Elk Grove, the City of Elk Grove Police Department, and the County of Sacramento have also been named as Defendants.

dispatched to her patrol vehicle.  While this much is
uncontroverted, the parties disagree on virtually everything that
transpired after Sergeant Boyes arrived in the neighborhood.

According to Sergeant Boyes, she immediately heard a loud
stereo with "a lot of bass" as she approached Crucero Drive, and
thereafter noticed what she perceived (at a distance of some
fifty feet) to be a black male reaching into a white truck,
presumably to turn off the music.  (See Pls.' UF No. 24).  She
proceeded to exit the vehicle and to approach the black male,
Plaintiff Jesse Blunt, despite the fact that the complaint
described a "little Black Honda" rather than a white truck.
Further, Mr. Blunt's truck was parked in front of the residence
he shared with his fiancee, Plaintiff Danielle Darden, at 8769
Crucero Drive, not the 8765 Crucero address identified in the
noise complaint.

Plaintiff Blunt, for his part, denies that he ever had the
radio on and states that he was simply in the process of putting
water in his truck's radiator when Sergeant Boyes arrived.
(Blunt Decl., ¶ 8).  Sergeant Boyes claims that although Blunt
willingly provided his first name when asked to identify himself,
he resisted when asked to also provide his last name and
identification and became increasingly agitated, particularly
when he observed Boyes running a records check.  (Boyes Dep.
160:6-12; 151:10-21).  This caused Sergeant Boyes to make a radio
dispatch to the effect that she was dealing with an uncooperative
individual.

///

///

That dispatch, in turn, caused other officers to arrive at the scene as back-up, including Deputies Rogers, Bunn and McClurg, all of whom, as stated above, are individually named as Defendants herein along with Sergeant Boyes.

Plaintiff Blunt, on the other hand, claims that he was cooperative with Sergeant Boyes and did not become alarmed until after Deputy Rogers arrived.  At that point, Blunt alleges that Boyes pushed his nose with her finger, stating that he was only willing to cooperate once another man had arrived.  (Blunt Decl., ¶ 13).  According to Blunt, this caused him to step back, to inform Boyes that her badge did not allow her to touch him in that fashion, and to tell Deputy Rogers that he consequently did not want to continue talking to Boyes.  (Id. at ¶ 14).  That announcement prompted Sergeant Boyes to direct that Deputy Rogers detain Blunt in a patrol vehicle.  Blunt alleges that Rogers then, without provocation, lunged at him with great force in "football tackle" fashion.  While Blunt sidestepped that maneuver and claims he fell to the ground as a "surrender", he states that the responding officers, which by this time included all four individually named Defendants, proceeded to strike, hit and choke him until he lost consciousness.  Id. at ¶¶ 16-17.  Blunt denies that he ever struck any officer (Blunt Dep., 70:4-5), and a neighbor who witnessed at least part of the incident, Gloria Bell, never observed Blunt either hit law enforcement personnel or provide any resistance to the deputies.  (Pls.' UF 69, 70).

Defendants' version of events is drastically different.  As stated above, Sergeant Boyes claims that Blunt became agitated almost immediately, especially when she began a records check.

4

1 Despite the February weather, she claims that Blunt was not

2 wearing a shirt and began sweating profusely.  She claims he

3 would not stay put during her questioning and began to walk

4 towards his truck and the garage, where she observed tools that

5 she believed could be used as weapons.  All of this engendered a

6 concern on Boyes' part that Blunt might be a "wanted person,

7 perhaps even a wanted felon."  (Boyes Dep., 160:6-16).  She

8 denies sticking her finger in Blunt's face, and claims that when

9 she decided that the circumstances warranted his detention in her

10 patrol car, Blunt jerked away and backed up as she and Deputy

11 Rogers tried to lead him to the vehicle.  According to Boyes,

12 Blunt then hit Deputy Rogers on the right side of the face and

13 began "boxing and dancing like basically Muhammad Ali."  (Id. at

14 257:16-17).  Deputy Rogers confirmed this development, even to

15 the extent of using the Ali/Cassius Clay analogy and describing

16 Blunt as "bouncing back and forth" with "both fists up" and

17 wanting to "fight".  (Rogers Dep., 188:23-189:11).

18     The wide discrepancy between the competing version of events

19 offered by the parties continues unabated in Defendants' version

20 of the resistance offered by Plaintiff Blunt.  The officers claim

21 that they had to physically take Blunt down, using body weight

22 and control holds, as Blunt continued to kick and thrash about.

23 Deputy Bunn states that he had to use his collapsible baton, or

24 asp, to hit Blunt in the ribs so that his arms could be extended

25 and handcuffed.  (See Defendants' Proposed UF Nos. 57, 58).

26     Defendants also contend that because Plaintiff Darden would

27 neither stay away from the ongoing altercation or obey directives

28 that she refrain from any intervention, they had to physically

restrain Ms. Darden and place her in handcuffs.  Darden, on the other hand, denies that any officer ever told her to step back from the incident (Darden Dep., 49:5-7), and claims that she was thrown to the ground and then pushed against the door of Sergeant Boyes' patrol car by Deputy Bunn.  (See Darden Decl., ¶¶ 13-15).  Darden further claims that after she and Blunt were placed in the patrol car, she saw officers standing about and laughing.  Id. at ¶ 19.

Jesse Blunt was subsequently charged, by Misdemeanor Complaint filed in state court on February 15, 2002, with resisting and obstructing a peace officer in violation of California Penal Code § 148(a)(1), and with battery on a police officer in violation Penal Code §§ 242 and 243(b).  Danielle Darden was charged with resisting and obstructing the officers pursuant to the same complaint.  The charges against both Plaintiffs were dismissed by the Sacramento County District Attorney's Office on March 10, 2004.

On August 7, 2002, while the criminal charges were still pending, Plaintiffs filed tort claims with both the County of Sacramento and the City of Elk Grove.  The County of Sacramento served a rejection as to the claims against it on August 26, 2002.  Elk Grove denied Plaintiff Darden's claim on October 9, 2002.  Blunt's claim was rejected two days later, on October 11, 2002.

On February 25, 2003, Plaintiffs filed a lawsuit in state court against the County of Sacramento alleging assault and battery, only.

///

The City of Elk Grove was not a named defendant in that action, which was voluntarily dismissed by Plaintiffs on September 23, 2004.  The present lawsuit was commenced the following day.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense.  *See* Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim ... may ... move ... for a summary judgment in the party's favor upon all or any part thereof."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

7

      Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323(quoting Rule 56(c)).

      If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 585-87 (1986); <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 288-89 (1968).

      In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 251-52 (1986); <u>Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers</u>, 971 F.2d 347, 355 (9th Cir. 1987).

///

///

///

///

Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)).  As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more that simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

///

///

///

///

///

///

9

**ANALYSIS**

**A.  Claim Presentation Issues**

     Defendants argue that Plaintiffs' claims, in their entirety, are time barred.  First, they allege that Plaintiffs failed to file their federal causes of action premised on 42 U.S.C. § 1983 within the applicable two-year statute of limitations.  Secondly, with respect to Plaintiffs' remaining state law claims, Defendants allege that the instant lawsuit, filed on August 24, 2004, was filed more than six months after Plaintiffs' tort claims were rejected by the County of Sacramento and the City of Elk Grove.  Finally, in a related matter also pertaining to the presentation requirements applicable to Plaintiffs' tort claims, Defendants claim that the tort claims were largely insufficient in the first place, because they failed to discuss all the legal theories ultimately asserted by Plaintiffs in this Complaint, and because the involvement of the specific officers ultimately sued was not enumerated with enough specificity.  Each of those arguments will be addressed in turn.

     **1.  Timeliness of § 1983 Claims.**  The parties agree that the applicable statute of limitations for Plaintiffs' § 1983 claims is two years.  In <u>Wilson v. Garcia</u>, 471 U.S. 261, 279-280 (1985), the Supreme Court held that because § 1983 actions are best characterized as actions for injuries to personal rights, the state statute of limitations applicable to personal injury actions should apply.

1  See also McDougal v. County of Imperial, 942 F.2d 668, 671-72

2  (9th Cir. 1991).   In California, that limitations period is

3  currently two years as set forth in California Code of Civil

4  Procedure § 335.1.   Defendants contend that Plaintiffs' § 1983

5  claims are time barred because the present action was not filed

6  until August 24, 2004, more than two years after the underlying

7  incident of February 9, 2002.

8       Significantly, however, both the length of the § 1983

9  limitations period, as well as any related question of whether

10 that period is subject to tolling, is determined by reference to

11 state law.   Wilson, 471 U.S. at 268-69, see also Trimble v. City

12 of Santa Rosa, 49 F.3d 583 (9th Cir. 1995).   Consequently, if

13 California law provides that the two year period for filing suit

14 in this case is tolled, that assessment bears on the timeliness

15 of Plaintiff's § 1983 claims.   California Government Code § 945.3

16 specifies that if an individual is charged with a criminal

17 offense, any potential claim that individual has against law

18 enforcement personnel relating to that offense is tolled during

19 the time the criminal charges remain pending.   The statute states

20 in pertinent part as follows:

21          "No person charged by indictment, information, complaint, or
            other accusatory pleading charging a criminal offense may
22          bring a civil action for money or damages against a peace
            officer or the public entity employing a peace officer based
23          upon conduct of the peace officer relating to the offense
            for which the accused is charged, including an act or
24          omission in investigating or reporting the offense or
            arresting or detaining the accused, while the charges
25          against the accused are pending before a justice, municipal,
            or superior court.
26
            **Any applicable statute of limitations for filing and
27          prosecuting these actions shall be tolled during the period
            that the charges are pending before a justice, municipal, or
28          superior court.**

                                  11

...

> Nothing in this section shall prohibit the filing of a claim with the board of a public entity, and this section shall not extend the time within which a claim is required to be presented pursuant to Section 911.2."

(emphasis added).

Based on this express statutory language, the period of time during which criminal charges were pending against Plaintiffs (February 15, 2002 through March 10, 2004) is excluded from the two year period for a timely claim premised on § 1983.  Since the present action was commenced less than seven months after the criminal charges against Plaintiffs were dismissed, and since only some nine days of the limitations period had transpired before those charges were instituted, after the tolled period is excluded Plaintiffs' § 1983 claims were filed well within the requisite two year period.

This interpretation has been adopted by the Ninth Circuit. In <u>Harding v. Galceran</u>, 889 F.2d 906 (9th Cir. 1989), the plaintiff was acquitted of criminal misdemeanor charges just over two years after those charges had been filed.  The plaintiff then proceeded to sue the law enforcement personnel involved, and the district court entered summary judgment in favor of the deputies. On appeal, the Ninth Circuit rejected the district court's reasoning that § 945.3 was inapplicable to § 1983 claims because the California statute arguably prohibited bringing a federal lawsuit and hence ran afoul of the Supremacy Clause (Art. VI, cl. 2) of the United States Constitution.

///

///

1   The Harding court explained that even though § 945.3 cannot

2   prohibit a potential plaintiff from bringing a § 1983 claim under

3   the Supremacy Clause, that does not mean that the tolling period

4   of the statute does not apply.  The court found "no inconsistency

5   between the purposes of section 945.3's tolling provision and the

6   policies behind section 1983.  Id. at 909.  To the contrary, as

7   Harding noted, "since federal law requires this court to apply

8   state tolling rules, application of section 945.3's tolling

9   provision ensures consistent adjudication in state and federal

10  courts."  Id.

11      In attempting to avoid the constraints of § 945.3 on the

12  running of the statute of limitations in this case, Defendants

13  cite to a California decision, Damjanovic v. Ambrose, 3 Cal. App.

14  4th 503 (1992).  That case contains language suggesting that once

15  an action has been filed, the rationale of the tolling provisions

16  of § 945.3 is no longer applicable.  Defendants contend that

17  because Plaintiffs went ahead and filed a state court action

18  against Sacramento County on February 25, 2003, while the

19  criminal charges against them in fact remained pending,

20  Damjanovic constitutes authority for the proposition that no

21  tolling provisions whatsoever should apply.

22      The defense reliance on Damjanovic is misplaced.  First,

23  the case is factually distinguishable.  Damajanovic involved a

24  criminally charged litigant who filed suit against the involved

25  law enforcement personnel while the criminal charges against him

26  remained pending.

27  ///

28  ///

When defendant moved to dismiss the civil action against him on grounds that no service of summons had been effectuated within the required three year period, plaintiff argued that the time for accomplishing such service should be tolled under § 945.3. The court rejected that argument since plaintiff had already chosen to file the lawsuit, and once he did so, tolling provisions were unavailable to skirt the requirements attendant to that lawsuit.

Here, on the other hand, Plaintiffs are not attempting to both file a premature lawsuit and simultaneously use the same statute prohibiting such a filing during the pendency of criminal proceedings (§ 945.3) in order to excuse their mishandling of the lawsuit.  Instead, Plaintiffs herein unquestionably filed the instant action after the charges against them were dismissed. They are not attempting to selectively use the provisions of § 945.3 in a competing fashion so as to serve their own purposes.

In addition, nothing in <u>Damjanovic</u>, which involved inconsistent positions taken within the same lawsuit, lends itself to a conclusion that the Plaintiffs' filing of a state lawsuit not including § 1983 claims can be used to somehow prohibit Plaintiffs from later filing their federal claims. Plaintiffs' filing, and subsequent dismissal, of a state lawsuit alleging only state claims for assault and battery simply has no bearing on their ability to assert federal statutory claims sounding under § 1983.  Plaintiffs' § 1983 claims are consequently not time barred, and Defendants' request for summary adjudication in that regard is denied.

///

14

1    **2.   Timeliness of State Tort Claims.**  In addition to arguing

2   that Plaintiffs' § 1983 claims are barred by the applicable

3   statute of limitations, Defendants also contend that the

4   remaining state claims are untimely as well.  According to the

5   defense, both Plaintiffs filed tort claims with the County of

6   Sacramento and with the City of Elk Grove that were denied in

7   writing on August 26, 2002 (County) and on October 9 and 11, 2002

8   (City).  Defendants cite to California Government Code § 945.6,

9   which provides that adequate written notice by a public entity of

10  a claim's rejection triggers a six month period for timely filing

11  a lawsuit on the rejected claim.  Because the present action was

12  not filed until August 24, 2004, almost two years after service

13  of their rejections, Defendants argue that the state claims now

14  asserted by Plaintiffs are time barred.[2]

15   While Defendants assert that Plaintiffs' state court filing,

16  and the pendency of that lawsuit between February 2003 and

17  September of 2004 should not operate to equitably toll the time

18  period for asserting Plaintiffs' state claims, it is not

19  necessary to consider the effect, if any, of the state action in

20  concluding that the state claims asserted in the present lawsuit

21  are indeed timely.  Nor is it necessary to determine whether the

22  City of Elk Grove's rejection letters strictly complied with the

23

24

25

26   [2]The state claims sought to be dismissed on this basis do
    not include the assault and battery claims asserted against the
27  County of Sacramento in the Fifth Cause of Action, or Plaintiffs'
    allegation that Defendants violated the Unruh Civil Rights Act,
28  California Civil Code § 52.1 (in the Sixth Cause of Action).

15

notice requirements of California Government Code § 913,[3] because the Court concludes that Plaintiffs' claims were filed within the requisite six month period after subtracting the time criminal charges were pending against them under § 945.3.

As already discussed, § 945.3 tolls the time within which an individual may assert claims against law enforcement personnel until criminal charges against the individual no longer remain pending.  Because the statute specifically does not extend the time for filing an initial claim with a public entity pursuant to California Government Code § 911.2, Plaintiffs herein had to file their tort claims with the County of Sacramento and the City of Elk Grove within six months following the February 9, 2002 incident, which they did.  Although the language of § 945.3 specifically exempts the time for presenting a tort claim from its purview, there is nothing in the statute that suggests it is not applicable to the six month limitation period under § 945.6 for bringing a lawsuit once the public entity claim is rejected. Indeed, § 945.6 states unequivocally that **"any** applicable statute of limitations for filing and prosecuting... actions shall be tolled during the period that [criminal] charges are pending..." (emphasis added).  The limitation periods contained within § 945.6 are unquestionably treated as statutes of limitation. <u>Moore v. Twomey</u>, 120 Cal. App. 4th 910, 913-14 (2004).

---

[3]Plaintiffs alternatively assert that because the City of Elk Grove did not mail the rejection letters to the proper address, the six-month period should be extended to two years under Government Code § 945.6(a)(2).

16

Consequently the time during which criminal charges were pending against Plaintiffs must be excluded in determining the requisite six month period for filing suit.

Because both rejections occurred while the criminal proceedings against Plaintiffs remained active, the statute of limitations did not begin to run until March 10, 2004, after which time Plaintiffs had six months to file suit on their state law claims.  The fact that Plaintiffs filed suit on August 24, 2004, less than six months later, means that their state law claims are timely.  Defendants are accordingly not entitled to summary adjudication as to this issue.

**3.  Sufficiency of State Tort Claims.**  Defendants argue that Plaintiffs are precluded from asserting any claim by way of the present action that is not specifically reflected in the underlying tort claims.  According to Defendants, because the claims filed with the County of Sacramento and the City of Elk Grove refers only to an assault and battery, Plaintiffs cannot plead the additional causes of action reflected in their Amended Complaint, which include claims for false imprisonment, malicious prosecution, intentional infliction of emotional distress, negligence, and violation of the Unruh Civil Rights Act. Defendants go on to assert that because the relevant tort claims fail to specifically identify the officers ultimately sued, claims against those officers also cannot be asserted.

The Defendants' arguments are misplaced.

///

///

A complaint may present a much fuller exposition of the facts than the underlying tort claim, so long as the complaint is not based on an "entirely different set of facts." See Stevenson v. San Francisco Housing Authority, 24 Cal. App. 4th 269, 278 (1994). Assertions set forth in a complaint are barred only when they reflect a "complete shift in allegations" from the initial tort claim. Blair v. Superior Court, 218 Cal. App. 3d 221, 226 (1990). Where the complaint merely elaborates or adds further detail to a claim, but is predicated on the same fundamental actions or omissions, courts have generally found the underlying claim to be sufficient. White v. Superior Court, 225 Cal. App. 3d 1505, 1510-11 (1990).

In White, the tort claim at issue alleged that the plaintiff was beaten and falsely arrested by a police officer. Following rejection of that claim, the plaintiff filed a complaint that included additional causes of action alleging, among other things, negligent hiring, training and retention and intentional failure to train, supervise, and discipline by the City of San Francisco. The White court rejected plaintiff's claim that these new causes of action were not fairly reflected in the claim filed with the City, reasoning that both the claim and complaint were premised on the same alleged mistreatment:

> "Both Plaintiff's complaint and her claim were predicated on the same fundamental facts – Officer Sanford's alleged mistreatment of Plaintiff. The causes of action for negligent hiring, training, and retention and for failure to train, supervise and discipline merely sought to show the direct responsibility of San Francisco for Officer Sanford's conduct. Plaintiff did not shift the fundamental facts about her injury."

Id. at 1511.

1  This reasoning is equally applicable here.  Plaintiffs have
2  not changed the fundamental facts upon which their claims are
3  based.  Like the Complaint, the tort claims filed with the County
4  of Sacramento refer to Plaintiffs being "struck, beaten and
5  brutalized by Elk Grove Police."  (See Exs. 1 and 2 to the Decl.
6  of John C. Joiner).  The claims lodged with the City of Elk Grove
7  similarly describe Plaintiffs as being "assaulted" and "beat up
8  and battered" by the police.  (Exs. 1 and 2 to the Decl. Of Terry
9  Fitwater).  The essential gravamen of both the tort claims and
10  the ensuing Complaint is unchanged.

11  The defense's assertion that the individual officers have
12  not been adequately identified is also untenable.  The Sacramento
13  County claim refers to the misdemeanor complaint by case number
14  as detailing the names of the implicated officers.  Examination
15  of that complaint[4] shows that Sergeant Boyes, Deputy Rogers and
16  Deputy Bunn are all identified therein by rank and badge number.
17  Moreover, the arrest report also contained within the court file
18  identifies Deputy McClurg and describes his involvement.  In
19  addition, the City of Elk Grove tort claims also make specific
20  numeric reference to the same arrest report which delineates all
21  participants to the February 9, 2002 incident.  Under these
22  circumstances Defendants herein cannot feign either ignorance or
23  lack of notice as to their claimed roles in this matter.

24
25

26  [4]Defendants have requested the Court to take judicial notice
of both the misdemeanor complaint, related documents filed in
27  conjunction with that complaint, and Plaintiff's complaint filed
in state court on or about February 25, 2003.  Those requests are
28  unopposed and are granted.

19

The purpose of the California Tort Claim Act is to give a governmental entity notice sufficient for it to investigate and evaluate potential claims, not to eliminate meritorious actions. Blair v. Superior Court, 218 Cal. App. 3d at 225.  The notice received by Defendants herein was sufficient to satisfy that purpose.

Summary adjudication as to the sufficiency of the underlying tort claims is denied.

**B.  Qualified Immunity Defense**

In addition to arguing that Plaintiffs' claims are time barred, Defendants also claim that their actions are insulated in any event from prosecution under various immunity doctrines. Turning first to Plaintiff's claims under § 1983, the defense of qualified immunity shields an officer from trial when the officer "reasonably mis-apprehends the law governing the circumstances she confronted," even if the officer's conduct was constitutionally deficient.  Brosseau v. Haugen, 543 U.S. 194, 125 S. Ct. 596, 599, 160 L. Ed. 2d 583 (2004)(per curiam).

Where, as here, some or all of the defendants seek qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive.  Saucier v. Katz, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).  In Saucier, the Supreme Court laid out the framework for determining an officer's entitlement to qualified immunity.

///

1   The threshold inquiry requires a court to ask, "taken in the
2   light most favorable to the party asserting the injury, do the
3   facts alleged show the officer's conduct violated a
4   constitutional right?"  Id. at 201.  The inquiry ends at this
5   stage if no constitutional right is found to have been violated;
6   the plaintiff cannot prevail.  Id.  If, on the other hand, the
7   plaintiff's allegations do make out a constitutional injury, then
8   the court must determine whether that constitutional right was
9   clearly established at the time of the violation.  Id.  If the
10  right was not clearly established, the qualified immunity
11  doctrine shields the officer from further litigation.  Id.
12  Finally, even if the violated right was clearly established, the
13  Saucier court recognized that it may be difficult for a police
14  officer fully to appreciate how the legal constraints apply to
15  the specific situation he or she faces. Under such a
16  circumstance, "if the officer's mistake as to what the law
17  requires is reasonable, . . . the officer is entitled to the
18  immunity defense." Id. at 205.

19  Plaintiffs' § 1983 claims herein are premised on theories of
20  excessive force, false arrest, and conspiracy under 42 U.S.C. §
21  1985 to fabricate false police reports and to levy malicious
22  charges against Plaintiffs.  As is evident from the recitation of
23  events set forth above, virtually every factual aspect of this
24  case is in hot dispute.  In the face of that dispute, Saucier
25  instructs that the facts must be taken in the light most
26  favorable to Plaintiffs in assessing the first prong of the
27  qualified immunity analysis.
28  ///

1    If we give deference to the Plaintiffs' version of events,

2  as we must, and accept as true Plaintiffs' version of an

3  unprovoked, unwarranted and brutal assault by the officers in

4  question, there can be no doubt for purposes of the present

5  motion that Plaintiffs' constitutional rights have been violated.

6  It is equally beyond dispute that Plaintiffs' right to be free of

7  excessive force and false arrest is clearly established under the

8  Constitution; indeed, Defendants make no credible argument to the

9  contrary.  The real area of inquiry, then, in determining whether

10  qualified immunity should apply rests with whether the officers'

11  actions were "reasonable" given the circumstances under which

12  they found themselves confronted.

13    The utter disparity between what Plaintiffs claim occurred,

14  and the version of events offered by Defendants, prevents this

15  Court from making any qualified immunity determination by way of

16  summary judgment.  Whether or not a reasonable officer would have

17  believed his actions were reasonable is a determination of law

18  that can be made upon summary judgment only if the material facts

19  are undisputed.  LaLonde v. County of Riverside, 204 F.3d 947,

20  953 (9th Cir. 2000).  Where, as here, the parties disagree on

21  what the plaintiffs or the officers actually did, the matter must

22  proceed to trial.  Id.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**C.  Applicability of State Law Immunities**

In arguing that Defendants are also immunized from liability with respect to Plaintiffs' state law claims, much of the rationale for rejecting any federal qualified immunity defense applies with equal force.  Defendants first contend, for example, that Plaintiffs cannot establish a violation of the Unruh Civil Rights Act if the same conduct does not support a claim under 42 U.S.C. § 1983.  The defense hence asks the Court to dispose of the Unruh Act claim simply on grounds that no § 1983 claims can be maintained, either on grounds that such claims are time-barred or are subject to qualified immunity.  The Court's rejection of both those arguments, and its conclusion that § 1983 claims can be maintained at this time, obviously removes Defendants' proffered rationale for dismissing the Unruh Act claim.

With respect to Plaintiffs' state claims for assault and battery, false imprisonment, and intentional infliction of emotional distress, Defendants pose arguments similar to those also posed in advocating qualified immunity.  They argue that the force they used to detain Plaintiffs was reasonable, whereas Plaintiffs must show that unreasonable force was used, and that the officers acted unreasonably, in order to make a prima facie case of assault and battery against a police officer.  Defendants further contend that no claim for false imprisonment can lie because Blunt's own actions caused the arrest.

///

///

///

23

1    Finally, in asking the Court to find no "outrageous" conduct

2  lending itself to intentional infliction of emotional distress,

3  Defendants also, in essence, ask the Court to subscribe to their

4  version of events.

5    All this focuses on the version of events offered by the

6  defense and ignores the fact that Plaintiffs offer a starkly

7  different scenario of what occurred on February 9, 2002.  If

8  Plaintiffs are believed, this Court cannot say as a matter of law

9  that they will be unable to establish claims not only for assault

10 and battery, but for false imprisonment and intentional

11 infliction of emotional distress as well.  Defendants are no more

12 entitled to state immunity as to those claims than they are

13 entitled to qualified immunity on the § 1983 causes of action.

14   Plaintiffs have not established viable claims, however, for

15 negligence and for malicious prosecution in that they have

16 identified no authority which controverts the defense argument

17 that immunity applies to both those claims.  With respect to the

18 Ninth Cause of Action, for negligent training, hiring, discipline

19 and retention against the public entity Defendants, only,

20 Defendants County of Sacramento and City of Elk Grove contend

21 that Plaintiffs have not identified any statute or enactment that

22 would suffice in imposing direct liability on them as opposed to

23 vicarious liability for the acts or omissions of their employees.

24 California Government Code § 815.2 provides that a public entity

25 is itself immune from any direct liability resulting from the

26 conduct of its employees "except as otherwise provided by

27 statute".

28 ///

Plaintiffs have made no showing of any such statutory basis for direct liability under California law as to the County of Sacramento and the City of Elk Grove.  At the very least, the statute or enactment imposing such liability must be identified. Searcy v. Hemet Unified School District, 177 Cal. App. 3d 792, 802 (1986).  Plaintiff's failure to meet that burden mandates that summary adjudication be granted as to the Ninth Cause of Action.

Defendants have also established that any liability for malicious prosecution is precluded by California Government Code § 821.6, which grants immunity to any public employee for "injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."  See Asgari v. City of Los Angeles, 15 Cal. 4th 744, 756-57 (1997). Plaintiffs conceded that § 821.6 does bar their Seventh Cause of Action, for malicious prosecution, and summary adjudication as to that claim will consequently be entered in favor of Defendants.

**D.  Failure to State Viable Claim**

Defendants make two arguments in the context of their qualified immunity argument that more properly relate to Plaintiffs' failure to state a viable claim rather than to a per se defense of qualified immunity.

///

///

///

First, Defendants point out that while Plaintiff's Third Cause of Action, for a § 1983 violation premised on excessive force, is predicated according to the Amended Complaint on not only the Fourth Amendment but also the First, Fifth, Eighth and Fourteenth Amendments (See Am. Comp., ¶ 30), in fact the Supreme Court has made it clear that the Fourth Amendment is the exclusive avenue for relief in excessive force cases. Graham v. Connor, 490 U.S. 386, 396-97 (1989); see also Armendariz v. Penman, 75 F.3d 1311, 1326 (9th Cir. 1996). Plaintiffs concede that they are indeed limited to the Fourth Amendment as to their excessive force claim (See Opp., 25:20-24), and summary adjudication to that effect is accordingly granted.

The second issue on which Defendants seek summary adjudication is more problematic. In their Third Cause of Action, Plaintiffs seek redress under 42 U.S.C. § 1985(3) for Defendants' alleged conspiracy in, among other things, fabricating false police reports. Defendants contend that Plaintiffs cannot pursue a viable conspiracy claim because, under the so-called "intracorporate conspiracy doctrine", conspiracies in civil rights actions cannot lie where individual members of the same governmental entity allegedly conspire with each other while acting in the course and scope of their employment. The circuits are split over whether extension of the intracorporate conspiracy doctrine to § 1985 is appropriate.

///

///

///

///

26

As discussed by the Central District in <u>Hoefer v. Fluor Daniel, Inc.</u>, 92 F. Supp. 2d 1055, 1057-58, while the Second, Fourth, Sixth and Eighth Circuits have followed the Seventh Circuit's lead in so extending the doctrine (in <u>Dombrowski v. Dowling</u>, 459 F.2d 190, 196 (7th Cir. 1972), the Ninth Circuit has to date expressly declined to decide the issue.  <u>See</u> <u>Portman v. County of Santa Clara</u>, 995 F.2d 898, 910 (9th Cir. 1995).  The First and Third Circuits, on the other hand, have refused to apply the doctrine.  <u>Hoefer</u>, 92 F. Supp. 2d at 1058, and cases cited therein.

After examination of the cases, and given the fact that the majority of circuit courts have held that the intracorporate conspiracy doctrine should indeed apply to § 1985 actions, this Court will apply the doctrine to the present case.  Summary adjudication as to the Third Cause of Action is therefore granted.

///
///
///
///
///
///
///
///
///
///
///
///

**CONCLUSION**

For the reasons set forth above, Defendants' Motion for Summary Judgment is DENIED.[5]  Summary adjudication is, however, granted in favor of Defendants as to the Third, Seventh, and Ninth Causes of Action.  In addition, the application of Plaintiffs' First Cause of Action, for excessive force in violation of 42 U.S.C. § 1983, will be limited to the Fourth Amendment of the United States Constitution, only.

IT IS SO ORDERED.

DATED: March 1, 2006

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

_____

[5]Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. Local Rule 78-230(h).

28